COVENANT MUT. BEN. ASS'N OF ILLINOIS v. PETERS.

(Circuit Court of Appeals, Eighth Circuit. September 27, 1897.)

No. 888.

APPEAL AND ERROR—EXCEPTIONS TO INSTRUCTIONS.
 Where one portion of a charge to the jury, to which exception is taken, is a mere inevitable corollary to a previous portion, which fully warranted the verdict, and as to which no exception was taken or error assigned, and it appears in the light of the pleadings that no harm resulted therefrom to the defeated party, the exception is unavailing.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This suit was instituted by Emma Peters, the defendant in error, against the Covenant Mutual Benefit Association of Illinois, the plaintiff in error (hereafter termed the "Association"), on two benefit certificates issued by said association to her deceased husband, Frederick R. Peters, each of which certificates obligated the association to pay to said Emma Peters a sum not exceeding $5,000 within 90 days after receipt of evidence of the death of her said husband. One of said certificates was issued on August 7, 1882; the other, on October 8, 1889. Frederick R. Peters died on June 15, 1895, having prior thereto paid, from time to time, assessments on said certificates, amounting in the aggregate to more than $900. Three conditions printed on the back of said certificates were as follows: "(1) The person on whose application this certificate of membership is issued (hereinafter called 'certificate holder') agrees to pay a mortuary assessment of one ($1) dollar on the death of each and every member of this association occurring subsequent to the date of this

certificate, or such proportional part thereof, all members being assessed ratably according to the certificate held by each, as may be necessary to secure an aggregate amount, not less than the sum required for the payment of the claim; and further agrees to pay all assessments which may, from time to time, be levied by the directors or managers for expenses and collection costs not exceeding eighteen cents per month, reckoned from date of certificate or last assessment collected; and further agrees that the aforesaid assessments shall be paid to the said association, at its principal office in Galesburg, Ill., within thirty (30) days from the date on which the notice relating thereto bears date, and the failure to pay such assessments, as above provided, or any one of them, or any part thereof, shall render this certificate null and void. (2) It is mutually agreed by and between the association and this certificate holder that there shall be six (6) assessments, and six only, issued each year, which assessments shall cover the entire cost of insurance, and include mortuary, expense, and collection costs, and be issued on the first day of January, March, May, July, September, and November of each year, and close thirty (30) days from date. (3) A printed or written notice, directed to the address of each and every member as it appears at the time on the books of the association, and deposited in the post office, or delivered by an agent of the association, or printed in a newspaper printed by the association, and forwarded as aforesaid, shall be deemed legal notice."

By way of defense to the suit, the association, after admitting the death of the plaintiff's husband, the issuance of the certificates, and the receipt of assessments thereon to the amount of $964.91, pleaded in substance the following facts: That on November 1, 1894, the association made an assessment on both of said certificates, being mortuary call No. 129, which assessments amounted in the aggregate to $20.20; that notice was duly given to the deceased, Frederick R. Peters, that said assessments must be paid on or before November 30, 1894, otherwise the certificates would be null and void; that he failed to pay said assessments until December 19, 1894, when the same were paid and received by the association; that receipts were issued therefor in the following form, which contained the following conditions indorsed on the back thereof:

"Received of F. R. Peters, this 19th day of December, 1894, $9.34, being for payment of the premium of $9.34, which became due November 30th, 1894, on policy No. 13,418, which said policy lapsed by reason of the nonpayment of the above sum. The above payment is offered, and the same is received by the association, subject to the conditions upon the back hereof, which are hereby made a part of this receipt. W. H. Smollinger, Secretary.

"The conditions upon which the within payment for which this receipt is given is accepted are as follows: First. That said member is now living, and of temperate habits, and is now, and has been during the past twelve months, in continuous good health, free from all diseases, infirmities, and weaknesses; otherwise, said payment and the within receipt and said policy shall be, and is, null and void, and the sum paid therein shall be subject to the order of the within-named person. Second. The receipt and acceptance of the within-named sum by the association shall not be held to waive forfeiture, the expiration of membership, or to reinstate the member, or create any liability upon the part of the association under said policy, except upon the fulfillment of the first condition of this receipt. Third. The acceptance of the within sum after the same became due shall not be established a precedent for the acceptance of future payments by the association, nor shall any subsequent payments upon said policy impair, waive, alter, or change any of the conditions of this receipt, or of said policy, or of any of the agreements and conditions relating thereto."

It was further alleged that, when said payment of December 19, 1894, was made and accepted, the plaintiff's husband was not in good health, but was afflicted at the time with Bright's disease, of which he subsequently died; that the fact of his having such disease was concealed from the association, and that the assessments on said certificates which were subsequently paid up to the death of the deceased were each and all accepted in ignorance of the fact that he was not in good health on December 1,

1894, and on December 19, 1894, when he was reinstated. In view of the premises, the association alleged "that by reason of said receipt of December 19, 1894, and the fact that said F. R. Peters was not at said time, and had not been for twelve months prior thereto, in continuous good health, said Peters was not reinstated as a member of defendant association, and his benefit certificate was lapsed, and he was not at the date of his death a member in good standing of said association, and that his said policy was on December 1, 1894, and forever thereafter, null and void." The plaintiff below replied, in substance, to the foregoing plea, that it was not true that the deceased was afflicted with Bright's disease on December 19, 1894; that it was not true that he concealed from the association any fact respecting his health; and furthermore alleged "that the defendant continuously and habitually received from deceased, during the whole period of his being insured with it, his premiums long after the expiration of thirty days from the date of the notice for their payment, and thus established a method and a custom, and thereby authorized and induced the said assured to believe that his premium would be received at any time within sixty days after the date of the call, and that, in pursuance of such inducement, the insured paid substantially every premium more than thirty days after its call." On the foregoing issues a trial was had to a jury. The evidence which was produced at the trial showed without substantial contradiction that very few, if any, of the numerous assessments which were paid by the deceased during the five years preceding his death, were made within the period of 30 days limited by the provision of the certificates heretofore quoted; that, as a rule, such payments were made about 45 days after the date of the notices of assessment, and in a few instances after the expiration of a longer period; and that since December, 1890, the association had not been in the habit of exacting payment of assessments from any of its members within the 30-day period limited in its policies or certificates, but had repeatedly advised them that assessments might be paid at the expiration of 45 days. The proof further showed that the payment of assessment No. 129, which was levied on November 1, 1894, was made by the deceased by a check on a bank located at St. Louis, Mo., which check was mailed at St. Louis, Mo., on December 15, 1894, and in due course of mail should have been delivered to the association at its chief office in the city of Galesburg, Ill., on the morning of December 16, 1894. The trial resulted in a judgment against the association, to reverse which it has brought the case to this court.

John M. Olin (W. C. Calkins and T. J. Rowe on brief), for plaintiff in error.

H. M. Pollard (Jesse A. McDonald on brief), for defendant in error.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

With one exception, all of the alleged errors which are assigned upon the record and discussed in the briefs were abandoned by counsel representing the defendant company during the progress of the oral argument, for which reason it only becomes necessary to consider a single exception to the charge which was taken at the trial, and is still relied upon as a ground for reversal. That portion of the charge to which the exception was addressed is as follows:

"If the insured paid to the defendant the amount of the call or assessments made November 1, 1894, within the general range of time within which for some years he had paid them, then the defendant had no right to complain of the same, and is estopped from asserting any forfeiture of said poli-

cies because of such delay in payments; and, if you find the facts aforesaid, then the defendant had no right to impose any additional burden or conditions upon the insured by reason of such delayed payments; and in such event the conditions as to health found on the back of receipts sent by the defendant to the insured for money paid for the November calls or assessments were without consideration and void."

Before giving the instruction last quoted, the trial court had charged the jury, in substance, as follows: That the issues raised by the pleadings in the case were whether the defendant company had waived the provision of its policies or certificates requiring mortuary assessments to be paid within 30 days after the date of the notice of assessments, and whether the health of the insured had become impaired, in the manner alleged, prior to December 19, 1894, when he paid mortuary call No. 129, which was levied on November 1, 1894; and that if the jury believed that the defendant company for a period of three years or more prior to November 1, 1894, had been in the habit of receiving payments of assessments from members more than 30 days after the date of the notice of assessment, and by such mode of dealing had induced the deceased to believe, and had given him sufficient reason to believe, that it did not insist upon the payment of assessments within the 30 days limited in its certificates, then the jury were at liberty to find that prior to November 1, 1894, the defendant company had waived or abandoned the provision of its contracts requiring assessments to be paid within 30 days after the notice thereof bore date. No exception was taken to this part of the charge, and with respect thereto no error is assigned.

In this state of the record, it is manifest, we think, that the exception to the charge which is now relied upon is of no avail, and should be ignored. The jury evidently found under that portion of the charge to which no objection was made, and upon abundant evidence, that the forfeiture clause of the certificates which was pleaded and relied upon by the defendant company had been waived prior to November 1, 1894, and was not thereafter a binding provision of either of the two certificates. This left the contracts between the insured and the insurer without any forfeiture clause for the nonpayment of assessments, unless from the conduct of the parties a new or modified agreement might be implied, to the effect that the certificates should become null and void if the assessments levied thereon were not paid within 45 days, instead of 30 days, after the date of the notice of assessment. We need not stop, however, on the present occasion, to inquire whether such a change in the terms of the original contracts between the insured and the insurer might have been fairly implied from the conduct and dealings of the parties as developed by the testimony, for no such modification of the terms of the contracts was pleaded. In its answer to the complaint, the defendant company based its defense solely on the ground heretofore stated that the two certificates in question became null and void on November 30, 1894, by reason of the nonpayment of assessment No. 129 on or prior to that day, and it did not suggest in its answer, in any form, that that clause of the contracts requiring payments to be

made within 30 days had become a dead letter prior to November 1, 1894, and that, in lieu thereof. the parties had substituted a new forfeiture clause, although such was the position which the defendant company attempted to assume during the progress of the trial. As it was in duty bound to do, the trial court confined the defendant to the issues which it had raised by its plea; and the excerpt from the charge above quoted, to which an exception was saved, when read in connection with what preceded it and considered in the light of the pleadings, clearly did the defendant no harm, and is not subject to just criticism. The judgment of the circuit court is therefore affirmed.